J-S25001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: C.E.L.M.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.T., MOTHER | |
| | No. 3221 EDA 2016 |

Appeal from the Order September 13, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):
CP-51-AP-0000771-2016
FID: 51-FN-001755-2014

BEFORE: BENDER, P.J.E., RANSOM, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 08, 2017**

T.T. ("Mother") appeals from the September 13, 2016 order that granted the petition filed by the Philadelphia Department of Human Services (DHS) to involuntarily terminate her parental rights to C.E.L.M.P. ("Child"), born in January of 2010. We affirm.

In its opinion, the trial court set forth the factual and procedural history of this case, as follows:

> The family in this case first became known to DHS on June 8, 2014, when DHS received a Child Protective Services ("CPS") report that Child's brother C.T. ("Brother") sexually assaulted Child in the home of B.P. ("Father") and Mother. This report was indicated. Child participated in a forensic interview with Philadelphia Children's Alliance ("PCA"), where she described being forced to have vaginal, anal and oral sex with Brother. Mother and Father denied to DHS that they knew of the abuse. On June 27, [2014] In-Home Protective Services were implemented by a Community Umbrella Agency ("CUA"). On July 29, 2014, DHS received a report that Child had been sexually assaulted by another of her brothers. At a second PCA interview Child described anal and oral sex with this second brother. DHS obtained an Order of Protective Custody, removed

Child and placed her in a foster home. On August 8, 2014, the court adjudicated Child dependent and fully committed her to DHS custody. CUA developed a Single Case Plan ("SCP") with objectives for Mother. Over the course of 2015 and 2016, Mother did not successfully complete her SCP objectives. On June 16, 2016, DHS filed a petition to terminate Mother's parental rights.

The goal change and termination trial was held on July 1, 2016. Mother, through her counsel, stipulated to the facts in the termination petition, but not their veracity. She also stipulated to DHS's exhibits. The current CUA social worker testified that Child came into care twenty-three months ago. Mother and Father attend SCP meetings and know their objectives. Mother's objectives are to attend drug and alcohol and mental health treatment, take domestic violence counselling and parenting classes, attend a Parenting Capacity Evaluation ("PCE") and visit with Child. Mother was unsuccessfully discharged from drug and alcohol treatment, and has not completed it. Mother completed a PCE, which recommended domestic violence counselling. Mother attended six sessions of a twelve-session course, and did not successfully complete the course. Mother attends weekly supervised visits. Mother has not taken parenting classes. Child never asks for more time to visit with Mother. Mother sells the medication prescribed for one of Child's siblings for money. When Mother attends Child's therapy, Mother talks about her own trauma, causing Child to shut down. It is in Child's best interest to be adopted: she would suffer no irreparable harm, and has live[d] with her current foster parent[] for two years. Mother does not have appropriate housing, and lives with her sister in Delaware. Because Father is often away at work, he delegated most parenting duties to Mother. Mother is not capable of keeping Child safe on a day-to-day basis. Child is in care because of sexual abuse by a sibling. Child does not talk about her parents outside of visits. Child is engaged in trauma therapy because of the sexual abuse she suffered. Foster parent ensures that Child attends her trauma therapy. Mother and Father had previously failed to enroll Child's sibling in trauma therapy as ordered by the trial court. Child is in a pre-adoptive home. She calls the foster parent her "aunt" and is very happy with her. It is in her best interest to be adopted. The foster parent keeps Child safe and protected. Mother does not have the capacity to keep Child safe on a day-to-day basis. Foster parent ensures that Child attends school, where Child is on the

honor roll. Because Mother wished to sign[] voluntary relinquishments of her parental rights, the trial court held it[s] decision in abeyance. At the next court hearing on September 13, 2016, Mother had not signed. The trial court terminated Mother's and Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). On October 11, 2016, Mother filed this appeal.[1]

> [1]Father has also appealed the termination of his parental rights. See In the Interest of C.E.L.M.P., a Minor, 3222 EDA 2016.

Trial Court Opinion (TCO), 11/21/16, at 1-3 (citations to the notes of testimony omitted).

Following its rendition of the facts and procedural history, quoted above, the trial court discussed the basis for its decision to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b), setting forth the facts from the documentation and testimony presented at the July 1, 2016 hearing. In its conclusion, the court stated that it found that DHS had carried its burden of proof and that the termination "would best serve Child's emotional needs and welfare." *Id.* at 9.

On appeal, Mother raises the following issues for our review:

1. Whether the [t]rial [c]ourt erred in [t]erminating [Mother's] [p]arental [r]ights under 23 Pa.C.S.[] [§] 2511(a)(1), the evidence having been insufficient to establish Mother had evidenced a settled purpose of relinquishing [her] parental claim, or having refused or failed to perform parental duties.

2. Whether the … evidence was sufficient to establish that [Mother] had refused or failed to perform parental duties, caused [Child] to be without essential parental care, that conditions have led to placement had continued to exist, or finally that any of [the] above could not have been remedied.

- 3 -

3.  Whether the [e]vidence was sufficient to establish that [t]ermination of [p]arental [r]ights would best serve the [n]eeds and [w]elfare of the [m]inor [Child], under 23 Pa.C.S. [§] 2511(b).

Mother's brief at 5.

We review an order terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will

affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We are guided further by the following: Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

With regard to Section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child."

In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In this case, as noted above, the trial court terminated Mother's parental rights pursuant to sections 2511(a)(1), (2), (5), (8) and (b). We need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Mother's first two issues appear to center on subsections (a)(1) and (2), although she only specifically identifies subsection (a)(1). In light of that fact, we analyze the court's decision to terminate under section 2511(a)(1) and (b), which provide:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on

- 6 -

the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

In **In re Z.P.**, 994 A.2d 1108 (Pa. Super. 2010), this Court provided direction relating to what considerations need to be addressed when reviewing a trial court's decision to terminate parental rights under various subsections of 2511(a). Specifically, relating to subsection (a)(1), the **Z.P.** Court stated:

A court may terminate parental rights under Section 2511(a)(1) where the parent demonstrates a settled purpose to relinquish parental claim to a child **or** fails to perform parental duties for at least the six months prior to the filing of the termination petition. **In re C.S.**, [761 A.2d 1197 (Pa. Super. 2000)]. The court should consider the entire background of the case and not simply:

mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his ... parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

**In re B.,N.M.,** 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied,* 582 Pa. 718, 872 A.2d 1200 (2005) (citing **In re D.J.S.,** 737 A.2d 283 (Pa. Super. 1999)).

**In re Z.P.**, 994 A.2d at 1117 (emphasis in original).

- 7 -

Mother's argument relating to section 2511(a)(1) centers on her assertion that her actions were not "consistent with a settled purpose of relinquishing [her] parental claim." Mother's brief at 11. Specifically, she relies on the fact that she attended all court hearings, case-planning meetings, and all scheduled weekly visitations with Child, at which she claims she was "actively engaged." *Id.* Countering this minimal argument relating to subsection (a)(1), the trial court found:

> During the six-month period prior to the filing of the petition, Mother's objectives were to attend drug and alcohol and mental health treatment, take domestic violence counselling, housing, parenting classes and visit with Child. Mother attends SCP meetings and knows her objectives. Mother was unsuccessfully discharged from drug and alcohol treatment, and has not completed it. Mother attended six sessions of a twelve-session domestic violence course, and did not successfully complete the course. Mother has not taken parenting classes. Mother sells the medication prescribed for one of Child's siblings for money. Because Father is often away at work, he delegated most parenting duties to Mother. Mother does not have appropriate housing, and lives in Delaware. Mother is not capable of keeping Child safe on a day-to-day basis. Child is in care because of sexual abuse by a sibling. Mother was allowed to participate in Child's therapy, but she made inappropriate disclosures of her own trauma during Child's therapy, causing Child to shut down. Mother prioritized her own needs over Child's emotional needs. Mother has failed to perform parental duties. Looking back beyond the six-month period, Mother's objectives have been the same, but her compliance has not increased. Mother has only been consistent with her visitation. As a result, the trial court did not abuse its discretion by finding clear and convincing evidence that Mother, by her conduct, had refused and failed to perform parental duties, so termination under this section was proper.

TCO at 4 (citations to notes of testimony omitted).

Mother essentially overlooks that portion of subsection (a)(1) directed at "a failure to perform parental duties." **See** 23 Pa.C.S. § 2511(a)(1). "Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." **In re B.,N.M.**, 856 A.2d at 855 (citation omitted). Here, as indicated by the trial court, Mother has failed to complete many of the objectives set forth for her, including drug, alcohol, and mental health treatment, undergoing domestic violence counselling, taking parenting classes, and securing appropriate housing. Moreover, the court found that Mother was not able to keep Child safe on a daily basis. The court further explained that Mother's failures extended back prior to the six-month period delineated in the statute. Thus, the court concluded that Mother refused and failed to perform her parental duties for a period of at least six months prior to the filing of the petition to terminate her parental rights.

After our thorough review of the record, we conclude that the trial court did not abuse its discretion in ordering the termination of Mother's parental rights. The record supports the trial court's findings and its conclusion that Mother's refusal or failure to perform parental duties occurred for a period of at least six months since the filing of the petition. At best, the record shows that Mother attended the weekly visits with Child,

which did not sufficiently counter the numerous objectives that Mother failed to complete. Therefore, Mother is not entitled to relief.

We next turn to Mother's third issue in which she claims that insufficient evidence established that termination would best serve Child's needs and welfare pursuant to 23 Pa.C.S. § 2511(b). The trial court discussed the facts and conclusions it reached in conjunction with this subsection, stating:

> Mother attends weekly supervised visits with Child. Mother and Child engage[] at visits, but Child is more wary about her siblings. However, Child never asks for more time to visit with Mother. Child does not talk about Mother outside of agency visits. Mother was unable to protect Child from sexual abuse in the home. Mother is unable to help process Child's emotional needs. Mother is not capable of keeping Child safe on a day-to-day basis. Child would not suffer irreparable harm if Mother's rights were terminated. Child has been placed in a pre-adoptive home with her current foster parent for nearly two years. She calls the foster mother her "aunt" and is happy and safe with her. It is in Child's best interest to be adopted. Foster parent ensures that Child attends her trauma therapy and school. DHS's witnesses were unwavering and credible. Consequently, the court did not abuse its discretion when it found that it was clearly and convincingly established that there was no positive, beneficial parent-child bond with Mother, and that termination of Mother's parental rights would not destroy an existing beneficial relationship.

TCO at 8 (citations to the notes of testimony omitted).

Here, the trial court found that Mother and Child do not share a positive, beneficial bond. The court emphasized the safety factor in that Mother is unable to protect Child on a daily basis, but also concluded that Mother cannot support Child's efforts to process her emotional needs.

- 10 -

Again, we conclude that the trial court did not abuse its discretion in that no evidence supported a finding that severing the ties between Mother and Child will have a negative effect on Child or that Child will suffer irreparable harm. In the nearly two years that had elapsed, the visitation remained supervised. Moreover, testimony supported a finding that Child and her foster mother are bonded and that Child is thriving in her foster home. Additionally, we note that to the extent that Child and Mother do have some type of bond, that bond is outweighed by Mother's inability or unwillingness to parent Child, and by Child's need for permanency. *See In re Adoption of C.D.R.*, 111 A.3d 1212, 1220 (Pa. Super. 2015) (concluding that the mother's bond with C.D.R. was outweighed by the mother's "repeated failure to remedy parental incapacity," and by C.D.R.'s need for permanence and stability). Because the court's findings are supported by the record, we may not disturb them. Accordingly, we affirm the trial court's order terminating Mother's parental rights to Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/2017

- 11 -